# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ROBERTO LABOY,          :
       Petitioner      :
                        :          **No. 1:16-CV-01951**
    vs.                   :
                        :          **(Judge Rambo)**
**PA STATE ATTORNEY**    :
**GENERAL, et al.,**        :
       Respondents   :

## MEMORANDUM

On September 26, 2016, the Court received and docketed a petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, by Petitioner Roberto Laboy. (Doc. No. 1.) Laboy is currently incarcerated at the Albion State Prison. Respondents filed a response to the petition on March 3, 2017 (Doc. No. 10), after being directed by this Court. Petitioner has not filed a traverse and his time to do so has passed. Accordingly, this matter is ripe for disposition. For the reasons set forth below, the petition will be denied.

## I.    Statement of the Case

### A. Procedural History

On May 10, 2011, after the conclusion of a jury trial, the jury found Laboy guilty of, <u>inter alia</u>, murder in the second degree and conspiracy to commit robbery. <u>Commonwealth of Pa. v. Laboy</u>, No. CP-38-CR-979-2006 (C.C.P. Lebanon Cnty.); (Doc. No. 10-3; 10-13). On July 27, 2011, the trial court

sentenced Laboy to life imprisonment without parole plus a concurrent term of ten to twenty years based upon these two convictions.  Commonwealth of Pa. v. Laboy, CP-38-CR-979-2006 (C.C.P. Lebanon Cnty.); (Doc. No. 10-4).  Laboy filed post-sentence motions, arguing that there was insufficient evidence to sustain his convictions and in the alternative, the Commonwealth committed a Brady violation.  (Doc. No. 10-8).  The trial court denied his post-sentence motions on January 6, 2012.  (Id.)

Laboy appealed the July 27, 2011 judgment of sentence to the Superior Court of Pennsylvania, raising two issues: (1) Whether a Brady violation was committed by the Commonwealth at trial when the Commonwealth failed to provide an expert report and witness cooperation information to the defendant; and (2) Whether the defendant should be acquitted because the evidence was insufficient to prove beyond a reasonable doubt that he took part in the assault for which he was convicted.  (Doc. No. 10-13.)  On September 11, 2012, the Superior Court affirmed Laboy's judgment of sentence.  Commonwealth of Pa. v. Laboy, No. 211 MDA 2012 (Pa. Super. Ct.); (Doc. No. 10-13.)

Laboy then sought an allowance of appeal with the Supreme Court of Pennsylvania which was denied on March 14, 2013.  Commonwealth of Pa. v. Laboy, No. 778 MAL 2012 (Pa.); (Doc. No. 10-15.)  On May 7, 2013, Laboy filed a petition for Post-Conviction Relief pursuant to the Post-Conviction Relief Act

("PCRA"), 42 Pa.C.S.A. § 9541 <u>et</u> <u>seq</u>.  (Doc. No. 10-16.)  In his PCRA petition,

Laboy alleged ineffective assistance of trial counsel because: (1) trial counsel

prevented him from testifying at his jury trial; (2) trial counsel failed to fully

investigate [his co-defendant's] statements prior to trial and failed to attempt to

have the murder weapon retrieved from the quarry; and (3) trial counsel failed to

seek removal of two jurors who were familiar with certain individuals potentially

involved in the case.  <u>Commonwealth of Pa. v. Laboy</u>, No. CP-38-CR-979-2006

(C.C.P. Lebanon Cnty.); (Doc. No. 10-22.)  After hearings on the PCRA petition

were conducted on April 28, 2014 and May 12, 2014, the PCRA court denied

Laboy's petition on November 20, 2014.  <u>Id.</u>  Laboy appealed the denial of his

PCRA petition to the Superior Court which was denied on October 21, 2015.

<u>Commonwealth of Pa. v. Laboy</u>, No. 2166 MDA 2014 (Pa. Super. Ct.); (Doc. No.

10-27.)  Laboy's subsequent petition for allowance of appeal to the Supreme Court

of Pennsylvania was denied on March 22, 2016.  <u>Commonwealth of Pa. v. Laboy</u>,

No. 872 MAL 2015 (Pa.); (Doc. No. 10-29.)  Laboy's instant petition for a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 followed.

### B. Habeas Claims Presented

Laboy's petition raises the following claims:

1. Whether the Commonwealth committed a <u>Brady</u> violation;

2. Whether Laboy's convictions were based upon sufficient evidence;

3. Whether trial counsel was ineffective for failing to investigate his co-defendant's statements, failing to investigate two jurors, and providing erroneous legal advice;

4. Whether the verdict was against the weight of the evidence;

5. Ineffective assistance of appellate counsel; and

6. Violation of Sixth Amendment right to effective assistance of counsel by PCRA counsel for failing to raise ineffective assistance of trial counsel claims at his PCRA proceeding.

(Doc. No. 1.)

## II.     Standard of Review

A habeas corpus petition pursuant to 28 U.S.C. § 2254 is the proper mechanism for a prisoner to challenge the "fact or duration" of his confinement. Preiser v. Rodriguez, 411 U.S. 475, 498-499 (1973).  "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Rather, federal habeas review is restricted to claims based "on the ground that [petitioner] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); Estelle, 502 U.S. at 67-68; see also Pulley v. Harris, 465 U.S. 37, 41 (1984); Johnson v. Rosemeyer, 117 F.3d 104 (3d Cir. 1997).

## III.    Background

It is first necessary to determine whether Laboy's claims presented in his habeas petition are cognizable in a federal habeas proceeding and whether they

have been exhausted in the state courts and, if not, whether the circumstances of his case are sufficient to excuse his procedural default.

## A. Claim 4 - Non-Cognizable

In Laboy's fourth claim, he alleges that the verdict was against the weight of the evidence. (Doc. No. 1.) Laboy did not raise this claim on direct appeal.

The United States Supreme Court recognizes that a challenge to the sufficiency of the evidence supporting a conviction implicates the Due Process Clause. See Jackson v. Virginia, 443 U.S. 307 (1979) (establishing standard). Inasmuch as a sufficiency of the evidence claim implicates a federal constitutional right, it provides a potential basis for federal habeas relief under 28 U.S.C. § 2254. An assertion that a state conviction is against the weight of the evidence adduced at trial, however, does not implicate the Constitution in the same manner. As the Supreme Court explored in Tibbs v. Florida, 457 U.S. 31 (1982), a reviewing court hearing such a claim sits as a "thirteenth juror" and disagrees with the jury's resolution of the conflicting testimony. It has long been established that the federal courts have no authority to grant habeas relief based on such grounds inasmuch as weight claims infringe upon the prerogative of the jury to assess credibility. In Marshall v. Lonberger, 459 U.S. 422 (1983), the Supreme Court declared that "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine

credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall, 459 U.S. at 434.

In accordance with the above, federal courts on 2254 review have routinely dismissed "weight of the evidence" claims as non-cognizable. See Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir. 1985) (observing that "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence."); Carter v. Parker, Civ. No. 13-4260, 2014 WL 3964924, at *38 (E.D. Pa. Aug. 12, 2014) (quoting Young v. Kemp for this proposition); Middleton v. Tennis, Civ. No. 10-548, 2011 WL 6224626, n.2 (E.D. Pa. Dec. 13, 2011); Wright v. Pennsylvania, Civ. No. 10-264, 2011 WL 10582593, *5 (E.D. Pa. Jan. 4, 2011); Hatcher v. DiGuglielmo, Civ. No. 08-3572, 2009 WL 3467957, *4 (E.D. Pa. Oct. 26, 2009); Willis v. Varner, Civ. No. 03-1692, 2004 WL 1109780, *10 (E.D. Pa. May 13, 2004).

Accordingly, the Court must conclude that habeas relief is not available as to Laboy's weight of the evidence claim and this claim will be denied.

## B. Exhaustion and Procedural Default

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law

issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. See, e.g., Castille v. Peoples, 489 U.S. 346, 351(1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996), abrogated on other grounds by Beard v. Kindler, 558 U.S. 53 (2009); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). The petitioner has the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claim prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). Nevertheless, a petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c).

Turning to procedural default, if a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review,

the federal court will excuse the failure to exhaust and treat the claims as exhausted. Wenger v. Frank, 266 F.3d 218, 223 (3d Cir. 2001); Lines v. Larkins, 208 F.3d 153, 160 (3d Cir. 2000); see Teague v. Lane, 489 U.S. 288, 297-98 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. Coleman v. Thompson, 501 U.S. 722, 749 (1991); Lines, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either: (1) "cause" for the procedural default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice." See McCandless v. Vaughn, 172 F.3d 255, 260 (3d Cir. 1999); Coleman, 501 U.S. at 750; Caswell v. Ryan, 953 F.2d 853, 857, 861-62 (3d Cir. 1992). To satisfy the first exception, a petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure. Coleman, 501 U.S. at 750. To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded the petitioner's efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). Once "cause" has been successfully demonstrated, a petitioner must then prove "prejudice." "Prejudice" must be something that "worked to [petitioner's] actual and substantial disadvantage,

infecting his entire trial with error of constitutional dimensions." Id. at 494.
Alternatively, a federal court may excuse a procedural default when the petitioner
establishes that failure to review the claim will result in a fundamental miscarriage
of justice. See Werts v. Vaughn, 228 F.3d 178, 192-93 (3d Cir. 2000).

### 1. Claim 5 – Ineffective Assistance of Appellate Counsel

In claim five of his petition, Laboy contends that his direct appellate counsel
was ineffective for failing to thoroughly "investigate [his] case in [its] entirety and
[to] submit a thorough substantial brief to the appellant courts." (Doc. No. 1.) To
comply with the exhaustion requirement of 28 U.S.C. § 2254, Laboy was required
to present all of his federal habeas claims to the Pennsylvania courts in his direct
appeal or in his PCRA proceeding. He has not done so with regard to claim five.
Accordingly, this Court must now determine whether Laboy has any other
available state court remedy through which he can present his unexhausted claims
to the Pennsylvania courts.

Under the PCRA, a petitioner may bring a second PCRA petition only if it is
filed within one year of the date the judgment becomes final unless the petition
alleges facts that meet one of the requirements set forth in § 9545(b)(1), which
Laboy has not. See 42 Pa. Cons. Stat. § 9545(b)(1). The Supreme Court of
Pennsylvania has held that the PCRA's timeliness requirements are mandatory and
jurisdictional in nature; thus, no court may properly disregard or alter them in order

to reach the merits of the claims raised in a PCRA petition that is filed in an untimely manner.  See, e.g., Commonwealth v. Murray, 753 A.2d 201, 202-03 (Pa. 2000).

Consequently, Laboy is precluded from presenting his unexhausted claim in a second PCRA petition based on the time limitations set forth in the PCRA. These time limitations are an independent and adequate state law ground sufficient to invoke the procedural default doctrine for purposes of federal court review.  See Lines v. Larkin, 208 F.3d 153, 165 (3d Cir. 2000).  As set forth above, this Court may not review Laboy's defaulted claim unless he demonstrates cause and prejudice for his default or establishes a fundamental miscarriage of justice. McCandless, 172 F.3d at 260.  Laboy neither argues cause and prejudice, nor the existence of a fundamental miscarriage of justice in his petition.  Consequently, he is not entitled to habeas corpus relief with respect to his ineffective assistance of appellate counsel claim.

### 2.  Claim 6 – Ineffective Assistance of PCRA Counsel

In his sixth claim found in the "addendum" to his petition, Laboy argues that trial counsel was ineffective for: failing to request a specific jury instruction; failing to impeach witnesses; failing to challenge the Commonwealth's expert or to hire an expert; and failing to challenge sufficiency on the grounds that the murder was a fight and not an attempted robbery.  (Doc. No. 1 at 21-22.)  Respondents

argue that these claims have not been exhausted in the state courts and that Laboy is now raising these arguments for the first time in his habeas petition. As such, Respondents contend that Laboy is not entitled to relief on his claim six.

It does not appear to the Court that Laboy is raising a freestanding claim of ineffective assistance of PCRA counsel in claim six. See <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555-56 (1987) (no constitutional right to counsel in collateral post-conviction proceedings); <u>Coleman v. Thompson</u>, 501 U.S. 722, 755 (1991) (no constitutional right to counsel on appeal from initial collateral post-conviction proceedings). Indeed, under the <u>Coleman</u> standard, Laboy would not have a cognizable claim that his PCRA counsel was ineffective. Rather, given Laboy's citation to <u>Martinez v. Ryan</u>, 566 U.S. 1 (2012), and liberally construing his petition, it appears that he attempts to argue that the failure of PCRA counsel to advance his ineffective assistance of trial counsel claims in his initial PCRA proceedings constitutes ineffective assistance of counsel. (Doc. No. 1 at 21.)

The United States Supreme Court has recognized that, under certain circumstances, the procedural default of an ineffective assistance of trial counsel claim may be excused where the default was caused by ineffective assistance of counsel in post-conviction collateral proceedings. See <u>Martinez</u>, 566 U.S. at 6-18. Specifically, the <u>Martinez</u> Court held that:

> [A] procedural default will not bar a federal habeas court
> from hearing a substantial claim of ineffective assistance

at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

Martinez, 566 U.S. at 17.

The Martinez Court limited its holding to cases where "under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding…." Id. Shortly thereafter, the Supreme Court revisited its Martinez holding, extending it to apply not only to cases where state procedural law expressly prohibited ineffective assistance claims on direct appeal, but also where "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." Trevino v. Thaler, 133 S. Ct. 1911, 1921 (2013). The Third Circuit has subsequently examined Pennsylvania procedural law and found that Martinez applies in Pennsylvania. Cox v. Horn, 757 F.3d 113, 124 n.8 (3d Cir. 2014).

To the extent that Laboy seeks relief on the ground that his PCRA counsel was ineffective, such relief is not cognizable and is denied. However, to the extent Laboy seeks to use PCRA counsel's alleged ineffectiveness as "cause" to excuse his procedural default of these unexhausted ineffective assistance claims, he has not met his burden of proof. Under Martinez, the failure of a federal habeas petitioner's counsel to raise a claim in an initial-review collateral proceeding can

constitute cause if: (1) PCRA counsel's failure itself constituted ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 688, 687 (1984); and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one." Martinez, 566 U.S. at 14.

"Under Strickland, courts are precluded from finding that counsel was ineffective unless they find both that counsel's performance fell below an objectively unreasonable standard, and that the defendant was prejudiced by that performance." Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002). A petitioner must overcome the strong presumption that his trial counsel's conduct fell "within the wide range of reasonable professional assistance" and that counsel "made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Even if a petitioner demonstrates that his attorney's performance fell below prevailing professional norms, habeas relief will only be available if he further demonstrates that this deficient performance prejudiced his defense. A petitioner must show that there is "reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The court is permitted to deny an ineffective assistance of counsel claim solely upon a petitioner's failure to make a sufficient showing under either prong. Id. at 687, 697.

Although Martinez serves as a potential basis for establishing "cause" to excuse Laboy's procedural default, the default can only be overcome if Laboy demonstrates "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 566 U.S. at 14. Laboy has not made that showing here. Indeed, the bald invocation to Martinez, without any facts or argument to support its applicability in this context simply does not satisfy the high burden of showing that the underlying constitutional claims have merit, as counsel is "strongly presumed to have rendered adequate assistance and made all significant decision in the exercise of reasonable professional judgment." Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at 690); see also Jones v. Delbalso, Civ. No. 16-1265, 2017 WL 221780, at *8 (E.D. Pa. Jan. 18, 2017). The Court cannot grant relief based on such vague and conclusory allegations. See Zettlemoyer v. Fulcomer, 923 F.2d 284, 298 (3d Cir. 1991) (Petitioner cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations). Accordingly, these claims are denied.

## C. Merits

Once a court has determined that the exhaustion requirement is met, and therefore that review on the merits of the issues presented in a habeas petition is

warranted, the scope of that review is set forth in 28 U.S.C. § 2254(d). That section states, in relevant part, that exhausted claims that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). AEDPA places the burden on the petitioner to make this showing. Williams v. Taylor, 529 U.S. 362 (2000).

The "contrary to" and "unreasonable application" clauses of § 2254 have independent meaning. Bell v. Cone, 535 U.S. 685, 694 (2002). A state court judgment is "contrary to" federal law when it is "diametrically different, opposite in character or nature, or mutually opposed" to "clearly established" decisions of the United States Supreme Court. Williams, 529 U.S. at 405. This may occur if "the state court ignores or misapprehends clear precedent or it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' " Wilkerson v. Klem, 412 F.3d 449, 452 (3d Cir. 2005) (quoting Williams, 529 U.S. at 406). Alternatively, "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's

decisions but unreasonably applies that principle to the facts[ ] of petitioner's case." Rompilla v. Beard, 545 U.S. 374, 380 (2005)(quoting Wiggins v. Smith, 539 U.S. 510, 519, 520 (2003)).  For the purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (internal citations omitted). "Under § 2254(d)(1)'s 'unreasonable application' clause ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 75-76 (quoting Williams, 529 U.S. at 411).  Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ.  Andrade, 538 U.S. at 75.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court."  Thus, § 2254(d)(1)'s "clearly established Federal law" signifies the holdings, not the dicta, of Supreme Court decisions. Howes v. Fields, 565 U.S. 499, 504 (2012). Specifically, only Supreme Court law established at the time of the state court's decision can be a basis for habeas relief under AEDPA.  See Greene v. Fisher, 565

U.S. 34, 39 (2011) (" § 2254(d)(1) requires federal courts to 'focu[s] on what a state court knew and did,' and to measure state-court decisions 'against this Court's precedents as of 'the time the state court renders its decision.' ") (quoting Cullen v. Pinholster, 563 U.S. 170, 182 (2011)). Finally, "under the AEDPA standard, the '[s]tate court[s'] relevant factual determinations are presumed to be correct unless the petitioner rebuts [that] presumption by clear and convincing evidence.' " McBride v. Superintendent, SCI Houtzdale, 687 F.3d 92, 101 (3d Cir. 2012) (quoting Han Tak Lee v. Glunt, 667 F.3d 397, 403 (3d Cir. 2012)) (citing 28 U.S.C. § 2254(e)(1)).

Turning to § 2254(d)(2), the test for the "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. Rountree v. Balicki, 640 F.3d 530, 537 (3d Cir. 2011) (citing Rice v. Collins, 546 U.S. 333, 338-39 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.' ")); see also Simmons v. Beard, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Further, as with § 2254(d)(1), the evidence against which

a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. <u>Rountree</u>, 640 F.3d at 538.

"If this standard is difficult to meet, that is because it was meant to be." <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011). Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents. It goes no farther." <u>Id.</u> Further, it was designed to be difficult "to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." <u>Martinez</u>, 566 U.S. at 9.

Finally, AEDPA scrutiny is applicable only if the state court adjudicated the petitioner's claims "on the merits." 28 U.S.C. § 2254(d); <u>see</u> <u>Appel v. Horn</u>, 250 F.3d 203, 210 (3d Cir. 2001). "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with <u>res judicata</u> effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." <u>Rompilla v. Horn</u>, 355 F.3d 233, 247 (3d Cir. 2004), <u>rev'd on other grounds</u>, <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005) (quoting <u>Sellan v. Kuhlman</u>, 261 F.3d 303, 312 (2d Cir. 2001)). Further, an "adjudication on the merits" can occur at any level of state court. <u>Thomas v. Horn</u>, 570 F.3d 105, 115

(3d Cir. 2009). However, "to qualify as an 'adjudication on the merits,' the state court decision must finally resolve the claim. This means that the state court's resolution of the claim must have preclusive effect." Id. (citing Rompilla, 355 F.3d at 247 (quoting Sellan, 261 F.3d at 311)). Where a state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential AEDPA standards do not apply, and the federal court must exercise de novo review over pure legal questions and mixed questions of law and fact. Simmons v. Beard, 581 F.3d 158, 165 (3d Cir. 2009) (citing Appel, 250 F.3d at 210). However, the state court's factual determinations are still presumed to be correct, rebuttable upon a showing of clear and convincing evidence. Simmons, 581 F.3d at 165 (citing Appel, 250 F.3d at 210).

### 1. Claim 1 – Brady Violation

While Laboy alleges that the Commonwealth committed a Brady[1] violation, he does not specify what particular violation he is alleging. The Court presumes he is alleging the Brady violation raised on direct appeal which challenged the testimony of the Commonwealth's pathologist, Dr. Bollinger. Petitioner argued that a Brady violation was committed by the Commonwealth at trial when the Commonwealth failed to provide an expert report and witness cooperation information to him. (Doc. No. 10-13 at 2.)

---

[1] Brady v. Maryland, 373 U.S. 83 (1963)

In Brady, the Supreme Court held that the due process rights of a defendant are violated when the prosecution withholds favorable, material evidence from the defense. Brady, 373 U.S. 83. To prove a Brady violation, the petitioner bears the burden of demonstrating that: "(1) the prosecutor suppressed evidence; (2) the evidence, whether exculpatory or impeaching, was helpful to the [petitioner;] and (3) the suppression prejudiced the [petitioner]." Commonwealth v. Collins, 888 A.2d 564, 577-78 (Pa. 2005) (citing Brady, 373 U.S. at 83). To establish prejudice, the petitioner must prove that there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Commonwealth v. Paddy, 15 A.3d 431, 450 (Pa. 2011).

Based on these standards, the Superior Court examined Laboy's first contention of a Brady violation when he alleged that the Commonwealth failed to provide an expert report for Dr. Barbara Bollinger. (Doc. No. 10-13 at 4.) The Superior Court noted, however, that the record showed that Dr. Bollinger's autopsy report was indeed entered into the record at trial and without objection from Laboy. (Id.) Moreover, the Superior Court noted that to the extent that Dr. Bollinger's testimony exceeded the scope of the autopsy report, Laboy made no timely objections and as such, waived this issue. However, even if he did not

waive this issue, the Superior Court noted that Laboy's failure to identify any specific objectionable testimony was fatal to any claim that he was prejudiced. (Id. at 4, 5.)

Laboy's second failure to disclose argument surrounds a potential agreement between the witness to the murder, Tina Garcia, and the prosecutors to provide Garcia a benefit during her sentencing on an unrelated crime in exchange for her testimony in Laboy's case. (Id. at 5.) Garcia had been charged with Forgery prior to the homicide occurring and the disposition of her case was continued until after Laboy's case. (Doc. No. 10-1 at 14.) The existence of Garcia's prior criminal charges were disclosed by the Commonwealth and Laboy was aware that Garcia's case had been continued because of her testimony in his case. (Id.) Furthermore, the Superior Court noted that there was no evidence in the record that any such agreement existed. (Doc. No. 10-13 at 5.) In fact, Laboy was given the opportunity to question Garcia as well as other witnesses to establish the existence of such an agreement, but did not do so. (Id.) In the absence of any evidence to support a finding that an agreement existed, the Superior Court concluded that the Commonwealth did not violate Brady by failing to disclose such an agreement. (Id.)

Upon review of the record, Laboy has not presented any evidence that the Commonwealth withheld or failed to disclose any such evidence or agreement, and

accordingly, the Court agrees with the Superior Court's denial of Laboy's <u>Brady</u> violation claims. This Court cannot say that the state courts' decision was contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Further, it was not based on an unreasonable determination of the facts in light of the evidence. This claim will be denied.

### 2. Claim 2 – Sufficiency of the Evidence

Laboy asserts that the Commonwealth failed to prove beyond a reasonable doubt that he was responsible for the death and robbery of the victim. (Doc. No. 1). A sufficiency of evidence claim requires an inquiry into whether, upon the evidence presented in a state criminal proceeding, a "rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979).

A criminal defendant may be convicted only "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." <u>In re Winship</u>, 397 U.S. 358, 364 (1970). The Supreme Court provided the federal standard for determining the sufficiency of the evidence to support a conviction in <u>Jackson v. Virginia</u>, 443 U.S. 307 (1979). Although direct evidence may be more probative of a fact, circumstantial evidence alone may suffice for a finding of guilt beyond a reasonable doubt. <u>Id.</u> at 324-25; <u>see</u> <u>also</u> <u>Fed. Power</u>

Comm'n v. Fla. Power & Light Co., 404 U.S. 453, 469 & n. 21 (1972) ("[E]ven in criminal cases, guilt beyond a reasonable doubt often can be established by circumstantial evidence.") (quoting Ind. & Mich. Elec. Co. v. Fed. Power Comm'n, 365 F.2d 180, 184 (7th Cir. 1966)).

Pursuant to Jackson, a federal court is to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Federal review of a sufficiency of the evidence claim under Jackson must be based upon state law, that is, the substantive elements of the crime as defined by applicable state law. Id. at 324 n. 16. The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the fact finder and, therefore, are beyond the scope of federal habeas review. Id. at 309; see also Johnson v. Mechling, 541 F. Supp. 2d 651, 666-67 (M.D. Pa. 2008).

It appears that Laboy challenges two elements of his convictions in his instant petition: (1) there was no evidence to support a finding that he stabbed the victim; and (2) the evidence at trial was insufficient to establish that the victim was killed during the course of a robbery. (Doc. No. 1); (Doc. No. 10-13). These issues were raised by Laboy on direct appeal and denied by the trial court and affirmed by the Superior Court. (Doc. No. 10-13).

### i.     Evidence supports Laboy stabbed the victim

To the first challenge that there was no evidence capable of supporting a finding that he stabbed the victim, Laboy points to the fact that there was no direct evidence that he stabbed the victim.  In affirming the trial court's decision, the Superior Court provided that there was "sufficient circumstantial evidence to allow a fact-finder to infer that Laboy had in fact stabbed [the victim]." (Doc. No. 10-13 at 6.)  Specifically, the court pointed to the fact that Garcia testified that Laboy was the assailant who was assaulting the victim the night he died; that she specifically observed Laboy punching the victim "in the area of his chest"; Laboy's co-defendant, Hower, also testified that he observed Laboy striking the victim in his chest and stomach area and that after he and Laboy fled the scene of the assault, he noticed that his shoes were leaving bloody footprints.  (Id.)  Hower also observed Laboy wiping a 4-inch pocketknife with a paper towel.  (Id. at 7.)  Finally, Dr. Bollinger, the Commonwealth's expert, opined that the cause of the victim's death was multiple stab wounds, consistent with a 4-inch pocketknife to the chest.  (Id.)

Taking this testimony as a whole, the court found it sufficient to allow a fact-finder to infer that Laboy stabbed the victim in the chest with a pocketknife during the assault and that the wounds caused by the stabbing caused the victim's death.  (Id.)  This Court cannot say that the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law as

determined by the Supreme Court of the United States.  Further, it was not based on an unreasonable determination of the facts in light of the evidence.  Accordingly, Laboy's sufficiency of the evidence claim fails with respect to the finding that he stabbed the victim.

### ii.    Evidence supports that the victim was killed during course of robbery

A defendant is guilty of robbery if, in the course of committing a theft, "he (i) inflicts serious bodily injury upon another; (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury…"  18 Pa.C.S.A. § 3701(a)(1)(i), (ii).  An act can be inferred to be in the course of committing a theft if it is found to occur during an attempt to commit theft.  Commonwealth v. Orr, 38 A.3d 868 (Pa. Super. 2011).

Here, the court provided that Garcia testified that she heard Laboy ask the victim for his money and wallet on the night of the incident, and that when the victim refused, Laboy pursued the victim and "beat the crap out of him."  (Doc. No. 10-13 at 7.)  Garcia further testified that while Laboy and the co-defendant were following her and the victim, the victim feared that "there's going to be a problem."  (Id. at 8.)  The court found that this evidence was sufficient to allow a fact-finder to infer that Laboy intended to rob the victim on the night of the incident, and that the subsequent assault on the victim was in reaction to the victim's refusal to hand over his money or his wallet.  (Id.)

Upon review of the above, this Court does not find that the state court's decision was contrary to, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States. Further, it was not based on an unreasonable determination of the facts in light of the evidence. Accordingly, Laboy's sufficiency of the evidence claim fails with respect to the finding that the victim was killed in the course of a robbery.

### 3. Claim 3 – Ineffective Assistance of Trial Counsel

In Laboy's final claims, he alleges that his trial counsel was: (1) ineffective for failing to fully investigate his co-defendant's statements prior to trial and failed to attempt to have the murder weapon retrieved from the quarry; (2) ineffective for preventing him from testifying at his jury trial; and (3) ineffective for failing to seek the removal of two jurors who were familiar with certain individuals potentially involved in the case. (Doc. No. 1.)

Prior to discussing these exhausted claims, the Court will provide the ineffective assistance of counsel standard as set forth in Strickland v. Washginton, 466 U.S. 668 (1984). In Strickland, the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the petitioner must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. 362,

390 - 91 (2000).  Second, the petitioner must show that he was prejudiced by the deficient performance.  "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 687.  To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in the performance prong and the prejudice prong.  See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir.1987), cert. denied, 484 U.S. 863 (1987).  As a result, if a petitioner fails on either prong, his claim fails.  Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999) ("This court may address the performance and prejudice components in any order, but need not address both if Mr. Foster fails to make a sufficient showing of one .").

The two-pronged test established in Strickland "qualifies as 'clearly established Federal law' " for purposes of the AEDPA. Rainey v. Varner, 603 F.3d 189, 197 (3d Cir. 2010) (quoting Williams v. Taylor, 529 U.S. 362, 391 (2000).[2] Therefore, under § 2254(d)(1), the relevant inquiry in assessing ineffectiveness claims that have been adjudicated on the merits is whether the state court's decision involved an unreasonable application of Strickland or are based on an unreasonable determination of the facts. Jacobs v. Horn, 395 F.3d 92, 107 n.9 (3d Cir. 2005).

### i. Counsel's failure to fully investigate co-defendant's statements and failure to attempt to have murder weapon retrieved

Laboy claims that trial counsel was ineffective for failing to investigation his co-defendant's statements about the murder weapon. (Doc. No. 1.) Upon review, the Court finds that Laboy is not entitled to habeas relief on this claim.

The background of this claim is as follows. Laboy asserts that:

> Co-Defendant's statements regarding the location of the alleged murder weapon [were] a key piece of evidence in the Commonwealth's case in chief. Although [T]rial [C]ounsel did not know whether the knife could be found in the quarry, [he] did not visit the … quarry or conduct an independent investigation. Although a great deal of time had elapsed between the time the knife was allegedly disposed in the quarry and Co-Defendant's statements, at a minimum, it would have been prudent to

---

[2] The standard under Pennsylvania law for ineffective assistance of counsel is consistent with the two-prong Strickland analysis.

consider the possibility based upon [Laboy's] request. The knife **may have** shed light on who was actually responsible for [the victim] Mr. Kern's death, **potentially** to the detriment of the Commonwealth's case. Also, an investigation **may have** … render[ed] Co-Defendant's statements unreliable or inconsistent.

Commonwealth v. Laboy, No. 2166 MDA 2014 (Pa. Super.) (internal citations

omitted) (emphasis original); (Doc. No. 10-27 at 8-9.)

The Superior Court, in affirming the PCRA court's denial of this claim

provided that:

> [Laboy] avers only the possibility that an investigation would have yielded favorable information or evidence, without explaining what the new information would be. Likewise, at the PCRA hearing, [Laboy] testified, "It's possible [an investigation] could have led to whether [Co-Defendant's] claims [were] reliable or if [Co-Defendant] was, in fact, deceiving authorities. Recovery of the knife … possibly may have shed light on who actually was responsible for Mr. Kern's homicide."
>
> Trial Counsel, on the other hand, testified at the PCRA hearing as follows. He did not investigate the truth of Co-Defendant's statements or the location of the knife. He opined, "I don't see how it would have advanced his cause whatsoever," and that an investigation "would only corroborate [Co-Defendant's] story." Instead, Trial Counsel reasoned, "by leaving [the whereabouts of the knife] as an open-ended question, I think that was a question for the jury to consider." Furthermore, Trial Counsel "cross examine[d Co-Defendant] vigorously … and pointed out in closing [arguments] that the police didn't attempt to retrieve the weapon."
>
> In denying relief, the PCRA court found Trial Counsel "articulated a reasonable basis for his failure to conduct

this investigation," and that successful retrieval of the knife "would have only reinforced [Co-Defendant's] credibility to the jury." The court further agreed with counsel's doubt "that physical examination of the knife, after it sat in the quarry for several years, would offer anything useful in exonerating" [Laboy]. The court also found Trial Counsel's strategy, "that it was better to leave the question open in the minds of the jurors as to why the Commonwealth had not recovered the knife," "had a much greater likelihood of casting the shadow of doubt over [Co-Defendant's] testimony and was appropriate under these circumstances." We find no error in the court's analysis.

Commonwealth v. Laboy, No. 2166 MDA 2014 (Pa. Super.); (Doc. No. 10-27 at 9-10.

In reviewing this claim, Laboy has offered nothing more than bald assertions of the possibility that an investigation would have yielded favorable information or evidence. Laboy has failed to establish that the absence of an investigation as to the knife prejudiced him so as to deny him a fair trial. Without a specific, affirmative showing as to how this piece of evidence would have produced a different result, Laboy has not established an ineffective assistance of counsel claim here and is not entitled to habeas relief on this claim. See Patel v. United States, 19 F.3d 1231, 1237 (7th Cir. 1994).

### ii. Counsel prevented Laboy from testifying at his jury trial

Laboy contends that his trial counsel was ineffective for failing to call him to the stand so that he could bring clarity to his involvement in the homicide and

robbery charges.  (Doc. No. 1.)  He avers that had he been allowed to testify, "there is an excellent chance that [he] would have been acquitted of criminal homicide 2nd degree and robbery."  (Id.)

At the PCRA hearings, Laboy testified to the following:

> Prior to trial, he and Trial Counsel discussed whether he should testify and discussed "the fact that if [he testified he would be] subject to being cross examined by the District Attorney and that it could be a bad decision." [Laboy] decided on the last day of trial to testify and told Trial Counsel.  Counsel responded "it wasn't a wise decision."  [Laboy] "felt as though [he] had no say," that Trial Counsel's "mind was very much made up" and that counsel "rushed things."
>
> In response to the question of why testifying would have benefited his case, [Laboy] stated: "I am not sure if it was going to benefit anything, but I believe that I had every right to sit on that stand and to fight for my life."  On cross-examination, [Laboy] conceded that Trial Counsel was concerned "from a strategy standpoint … about subjecting [him] to cross-examination by the Commonwealth."
>
> Trial Counsel confirmed he did not "think it would have been a good idea for [Laboy] to testify" and that he advised [Laboy] with his opinion.

Commonwealth v. Laboy, No. 2166 MDA 2014 (Pa. Super.); (Doc. No. 10-27 at 6-7.)

The PCRA court found that "[a]lthough [T]rial [C]ounsel did not feel that it was a good idea for [Laboy] to testify, he never told [him] that he could not do so." (Id.)  Instead, counsel merely "advised him that 'it wasn't a wise decision.' "  (Id.)

The PCRA court further found that Trial Counsel "had a reasonable basis for advising [Laboy] that it would not be a wise decision for him to testify at trial[,]" (id.), holding that "the avoidance of opening up [Laboy] for cross-examination in a capital murder case was sound advice and was reasonable trial strategy under the circumstances." (Id.) The Superior Court affirmed, providing that the PCRA court's ruling was supported by the record an free from legal error. (Id.)

After reviewing the record, this Court concludes that the disposition of Laboy's instant claim did not result in a decision contrary to, or involving an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Given that Laboy's taking the stand could have opened him up for cross-examination in a capital murder case, it was sound advice for counsel to give to Laboy not to exercise his right to testify. See Jones v. Folino, No. 4:06-CV-102, 2006 WL 1892713 (M.D. Pa. July 10, 2006). Accordingly, the state courts' finding that trial counsel did not provide ineffective assistance was not an unreasonable application of federal law and Laboy is not entitled to habeas relief on this claim.

### iii.    Counsel's failure to seek the removal of two jurors

Laboy contends that Trial counsel was ineffective when he failed to properly investigate the relationships of Jurors number 3 and 11 to two witnesses at his trial.

(Doc. No. 1.)  The Superior Court summarized the background of the PCRA

hearing as follows:

> Per the agreement of the parties, all guilt-phase witnesses were sequestered during the course of the trial, but potential penalty-phase witnesses were not sequestered. During [trial,] Juror 3 indicated that he recognized someone sitting in the audience in the Courtroom…. At that point, the jury was sent upstairs, Juror 3 was brought back to the Courtroom, was sworn in and questioned by the Court. The Court asked Juror 3 whether the presence of the individual in the Courtroom during the guilt phase of the trial would impact his decision in any way in the event the person was to testify in the penalty phase of the proceeding. Juror 3 answered that he would still be able to be fair and impartial during the guilt phase. Neither the Commonwealth or [T]rial [C]ounsel asked any questions of Juror 3.
>
> Later, Juror 11 related to the Court that she had gone to high school with one of the witnesses who testified during presentation of the Commonwealth's case. Juror 11 advised the Court that she had never socialized with the witness, the two were not close friends, and that they had no contact for six years since graduation. Juror 11 noted that she had not recognized the witness's name, but had recognized her face when she was called to testify. When the trial was reconvened, the Court called the Commonwealth attorney and [T]rial [C]ounsel to sidebar and notified them of the situation. We explained that Juror 11 had indicated that she would be able to continue as a fair and impartial juror despite her acquaintance with the witness. Neither the Commonwealth or trial counsel thought it necessary to question Juror 11 under the circumstances. [Laboy] now claims that he requested [T]rial [C]ounsel [t] seek removal of both jurors.

Commonwealth v. Laboy, No. 2166 MDA 2014 (Pa. Super.); (Doc. No. 10-27 at 10-11.)

At the PCRA hearing, Laboy testified that he requested Trial Counsel to seek Juror 3 and 11's removal, stating, "I simply no longer wanted them on the jury panel once they brought forth that they knew [a] possible [or] potential witness." (Id.) Trial Counsel testified that he did not remember whether Laboy requested him to take action concerning the jurors, but that if Laboy did, he would have complied. (Id.)

In finding no ineffectiveness, the PCRA court opined that:

> Both jurors were appropriately questioned by the Court and indicated that they would be able to remain fair and impartial in their consideration of the evidence. [Laboy] has not shown how his case was prejudiced by their remaining on the jury or how the juror's tenuous connections with the individuals involved in the case affected the outcome of the case.

(Id. at 12.) The Superior Court found no error in the PCRA court's analysis and affirmed. (Id.)

After reviewing the record, this Court concludes that the disposition of Laboy's instant claim did not result in a decision contrary to, or involving an unreasonable application of, clearly established federal law and did not result in a decision based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Laboy has offered nothing to

show that trial counsel was wrong, let alone unreasonable, in the assessment of both jurors. Laboy has not overcome the "strong presumption" that, given the circumstances at the time, counsel's decision not to seek the removal of either juror was "sound trial strategy." Moreover, Laboy has wholly failed to demonstrate how the failure to seek the dismissal of either juror, even theoretically, has prejudiced him. Accordingly, the state courts' finding that trial counsel did not provide ineffective assistance was not an unreasonable application of federal law and Laboy is not entitled to habeas relief on this claim.

## IV.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322 (2003). In the instant matter, jurists of reasons would not find the disposition of Petitioner's petition debatable. As such, no COA will issue.

**V.   Conclusion**

For the foregoing reasons, Laboy's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied and a COA will not issue.  An appropriate Order follows.

                                          **s/Sylvia H. Rambo**
                                          SYLVIA H. RAMBO
                                          United States District Judge

Dated: December 7, 2017